**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IRWIN DELAY,                              )
                                         )
         Plaintiff        )
                                         )
         v.               )        Civil Action No. 2:21-cv-1037
                                         )        Magistrate Judge Patricia L. Dodge
DOLLAR ENERGY FUND,                       )
                                         )
         Defendant.       )
                                         )

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Dollar Energy Fund's Motion for Sanctions (ECF No. 55.  For the reasons that follow, the Motion for Sanctions will be granted in part and denied in part.

**I.      Relevant Procedural Background**

*Pro se* Plaintiff Irwin Delay ("Delay") commenced this action in August 2021 against Defendant Dollar Energy Fund ("Dollar Energy").  In his Complaint, Delay alleges that Dollar Energy engaged in disparate impact discrimination on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and violated Pennsylvania's Criminal History Records Information Act, 18 Pa. C.S.A. 9101 *et seq.* ("CHRIA"). (ECF No. 4.)

After several discovery disputes and extensions, fact discovery closed on September 12, 2022.  (ECF No. 45.)  Dollar Energy now moves for sanctions, seeking either (1) dismissal of the case under Rule 11, arguing that Delay filed this race discrimination suit in bad faith, or (2) in the

alternative, fees and costs associated with needless motions practice, extended discovery, and the re-opening of Delay's deposition under Rule 37(e).  (ECF No. 55 ¶¶ 34–35, 70–71.)

## II.   Discussion

### A.   Dollar Energy's Request for Rule 11 Sanctions Will Be Denied

#### 1.   Relief Requested under Rule 11

Dollar Energy argues that Delay knew that his race discrimination claim had no evidentiary support when he filed his Complaint because he was instead "absolutely convinced" that Dollar Energy rescinded his job offer due to his disability.  (ECF No. 55 ¶ 27.)  Dollar Energy further argues that it was harassed by Delay when he sought discovery on the issue of disability (which was unrelated to his race discrimination claim) and published a website claiming that Dollar Energy did not want to provide Delay with a reasonable accommodation.  (*Id.* ¶¶ 28, 30–32.)  Thus, Dollar Energy asks that this Court sanction Delay under Rule 11 "by dismissing his lawsuit for knowingly filing claims that lacked evidentiary support and for filing this lawsuit for improper, harassing purposes."  (*Id.* ¶ 35.)

#### 2.   Rule 11 Standard

Rule 11(b) requires that an attorney or *pro se* party who presents pleadings, written motions, or other papers certify "to the best of the person's knowledge" and "after an inquiry reasonable under the circumstance" that (1) any paper presented to the Court "is not being presented for any improper purpose," (2) the "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) the "factual allegations have evidentiary support" or

will likely have evidentiary support after discovery; and (4) that denials of factual contentions are warranted.  Fed. R. Civ. P. 11(b); *see also* Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment.

Rule 11 contains a "safe harbor" provision that outlines the procedural steps that a party must take when filing a motion for sanctions under Rule 11.  *See* Fed. R. Civ. P. 11(c)(2).  The requirements of Rule 11(c)(2) are "are not mere technical rules, but rather serve the substantial function of 'giv[ing] the offending party a "safe harbor" within which to withdraw or correct the offending pleading.'"  *Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 125 (3d Cir. 2012) (quoting *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011).  "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. 11(c)(2).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  *Id.*

In this case, the Court granted in part and denied in part Dollar Energy's request to extend time to file a motion for sanctions and found that a 14-day safe harbor was appropriate "[i]n light of Plaintiff's unambiguous statement that he will not consider withdrawing or correcting his complaint under any circumstances." (*See* ECF No. 52, 53 & 54.)

After notice and a reasonable opportunity to respond, the Court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  The "central purpose of Rule 11 is to deter baseless

filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).   Rule 11 sanctions may take many forms, including nonmonetary injunctions, monetary penalties, and awards of attorney's fees and are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."   Fed. R. Civ. P. 11(c)(4).

Although "*[p]ro se* litigants in particular are afforded a great deal of latitude for 'foot-fault' violations of Rule 11(b), and courts are often hesitant to grant motions for sanctions against inexperienced *pro se* litigants," *Wirs v. Republican Nat'l Comm.*, No. 19-4072, 2021 WL 4477009, at *9 (E.D. Pa. Sept. 30, 2021), Delay's status as a *pro se* litigant does not shield him from Rule 11 sanctions.  *Aikens v. Lobster*, No. 21-00434, 2021 WL 2018994, at *4 (W.D. Pa. Apr. 9, 2021), *report and recommendation adopted by* 2021 WL 2016316 (W.D. Pa. May 20, 2021).

### 3.    Dollar Energy's Motion for Sanctions under Rule 11 Will Be Denied

Delay's first argument against the imposition of Rule 11 sanctions is that Dollar Energy has failed to separate the Rule 11 motion from its Rule 37 motion.   (ECF No. 60 (citing Fed. R. Civ. 11(c)(2).)  In oral argument, Dollar Energy argues that one motion including relief under Rule 11 and Rule 37 is proper.

Several cases in the Third Circuit, as well as district courts outside of the Third Circuit, have found that the failure to bring a *separate* Rule 11 motion violates the requirement that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. 11(c)(2); *see Gorge Design Grp. LLC v. Syarme*, No. 2:20-cv-1384, 2020 WL 8672008, at *6 (W.D. Pa. Dec. 3, 2020) (denying Rule 11 motion in part because "plaintiff presented its purported Rule 11 motion for sanctions alongside a

multitude of other grounds for relief"); *Community Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, No. 3:10-1559, 2014 WL 1516152, at *2 (M.D. Pa. Apr. 15, 2014) (denying Rule 11 motion that was combined with a Rule 37(a) motion to compel and responses to discovery motions); *see also*, *Res. Mine, Inc. v. Gravity Microsystem LLC*, No. 9-573, 2022 WL 992844, at *5 (E.D.N.Y. Jan. 7, 2022), *report and recommendation adopted by* 2022 WL 992815 (E.D.N.Y. Mar. 31, 2022) (denying motion for sanctions because plaintiffs' motion also requested relief under Rule 26, Rule 37, and 18 U.S.C.S. § 401); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 444 F. Supp. 3d 484, 487 (S.D.N.Y. 2020) (noting that plaintiffs' Rule 11 motion was improper for numerous reasons, in part because it "improperly combined their Rule 11 motion with a motion under Rule 37, rather than making their Rule 11 motion separate from any other motion as Rule 11 requires."); *Brethren Mut. Ins. Co. v. Sears, Roebuck and Co.*, No. 12-0753, 2014 WL 3428931, at *5 (D. Md. July 10, 2014) (denying Rule 11 sanctions in part because defendants "combined their motion for Rule 11 sanctions with their motion for Rule 37 sanctions, their request to reopen discovery, and their motion for leave to file a third-party complaint").

The Court finds these cases persuasive. As described by the Middle District of Pennsylvania, "the procedural requirements of Rule 11 are crystal clear." *Community Ass'n Underwriters of Am., Inc.*, 2014 WL 1516152, at *2. The safe harbor provisions, requiring that a motion "be made separately from any other motion," "describe the specific conduct," and served according to Rule 5, "stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule," *see* Fed. R. Civ. P. 11 Advisory Committee's Note to 1993

Amendment, and gives "'the offending party a "safe harbor" within which to withdraw or correct the offending pleading.'"  *Metro. Life Ins. Co.*, 502 F. App'x at 125 (citation omitted).

By addressing both Rule 11 and Rule 37 issues in the same motion (even if separated by a different heading), Dollar Energy failed to respect these procedural requirements requiring separateness and specificity, which is particularly important in this case in light of Delay's *pro se* status.  Fed. R. Civ. P. 11(c)(2).   Indeed, Rule 11(d) explicitly *excludes* from Rule 11's scope discovery motions under Rules 26 through 37.  Fed. R. Civ. P. 11(d).  Further, although the Court shortened the safe harbor period from 14 days to 21 days in response Dollar Energy's motion for an extension of time, there is no assertion in Dollar Energy's Motion for Sanctions or the supporting exhibits that the Motion was in fact properly served on Delay pursuant to Rule 5.  (*See* ECF Nos. 55 to 55-14).

Thus, the Court will deny Dollar Energy's Motion for Sanctions pursuant to Rule 11.

**B.      Dollar Energy's Request for Rule 37(e) Sanctions Will Be Granted in Part and Denied in Part**

1.      Relief Requested under Rule 37

The second part of Dollar Energy's Motion for Sanctions cites Rule 37 and "seeks an order requiring Plaintiff to pay its additional costs and attorney-fees related to its filing of two motions to compel and re-opening Plaintiff's deposition," "[d]ue to Plaintiff intentionally withholding communications until Court-ordered to produce them, his evasive responses, and his efforts to impede efficient discovery."  (ECF No. 55 ¶¶ 68, 71.)

Dollar Energy asserts that the Court has "discretion to impose sanctions for Plaintiff's intentional destruction of electronically stored information and his conduct designed to impede

discovery." (*Id.* ¶ 70.)  In so arguing, the only specific provision in Rule 37 that Dollar Energy cites is Rule 37(e), which governs the failure to preserve electronically stored information ("ESI").[1]  (*See generally*, *id.* ¶¶ 36–71.)  Thus, the Court will analyze Dollar Energy's request for discovery sanctions pursuant to Rule 37(e).

2.    Procedural History Related to Dollar Energy's Motion for Sanctions

After Dollar Energy filed its Motion for Sanctions in November 2022, the Court received two voicemails on February 3, 2023 at 12:39 AM and 12:48 AM from an individual identifying herself as "Rebecca Sutton." At the Court's direction, the voicemails were transcribed by a court reporter and docketed, and the parties were provided with an opportunity to respond.  (ECF Nos. 67, 68, & 69.)  The first voicemail contains a host of allegations against Delay, including that (1) he lied about her making or owning the website, (2) he wrote false emails from her account, (3) he

---

[1] Dollar Energy also includes factual allegations related to Andrea Somogie and Rebecca Sutton.

Andrea Somogie was identified as one of the individuals Delay allegedly could not locate to support his claim in this suit. (ECF No. 55 ¶¶ 14–15.) Dollar Energy was able to locate Somogie who provided an affidavit in this case.  (ECF No. 55-6.) Somogie's affidavit contradicts Delay's claims that he could not locate her.  She asserts that he did in fact reach out to her (with the same phone number that she used while she was coordinating with Delay and Dollar Energy to accommodate his disability) and he has not reached back out since she told him that "his claim that Dollar Energy Fund did not want to accommodate him was not true because Dollar Energy Fund was very cooperative with the accommodations process and had spent considerable time and effort putting the accommodations in place."  (*Id.*) Although this inconsistency is concerning and, if true, would add another example in a continuing pattern of obstructing discovery in this case, the alleged discovery violations related to Somogie in this case do not appear to be related to spoliation of electronic discovery discussed above under Rule 37(e).

As discussed herein, Sutton's involvement in this case is related to the emails regarding the case, a website for the case, and fundraising efforts.  The website (www.dollarenergydiscriminates.org) is no longer active.  Despite this involvement, Delay was able to recover only five email "blasts" from Sutton that were sent to out to 19 alleged potential donors.  Even taking Delay's arguments that he did not have control over Sutton and discoverable material in her possession as true, which the Court questions in light of the totality of the circumstances, Delay's Facebook messages and further email or text message correspondence between him and Sutton should have been preserved. Those are the grounds for Rule 37(e) sanctions here; thus, although Sutton's voicemails and mp3 message, which are discussed below, are confusing and concerning to the Court, those facts are outside of the scope of this Rule 37(e) ruling.

promised her money from any settlement due to the fact that he had made fraudulent charges to her account, (4) he has a history of stalking and listens to her calls, (5) he enters Canada illegally, and (6) he is still involved in criminal activity.  (ECF No. 67.)  The second voicemail provided further contact information for Sutton.  (ECF No. 68.)

Only Dollar Energy filed a response to the transcripts.  (ECF No. 70.)  Dollar Energy's supplemented its Motion for Sanctions by representing that it has been diligently trying to contact Sutton using the phone number provided.  (*Id.* ¶ 6.)  After unsuccessfully calling her on February 10, 2023, Dollar Energy's counsel received a "missed call" from that phone number but was unable to contact Sutton immediately after that missed call.  (*Id.* ¶¶ 7–8.)  The next day, counsel received an email from the email address associated with Sutton with an attached mp3 audio file.  (*Id.* ¶ 9.)

Dollar Energy argues that the "messages purportedly left by Rebecca Sutton lend considerable support to [its] Motion for Sanctions" based on the caller's statement that Delay had been writing emails from Sutton's email account, listening to her phone calls, and trying to use her identity to try to win the settlement, as compared to Delay's prior representations that Sutton emailed him saying she was unwilling to participate or  provide any of the evidence unless compelled by a Canadian court.  (*Id.* ¶¶ 12–13.)

Dollar Energy argued that "[t]o the extent the Court would be aided by verification that the messages left in the Court's voicemail were from Rebecca Sutton" in ruling on the current motion, the Court should order Delay to either request that Sutton appear remotely to offer testimony or to pay all attorney's fees and costs associated with a subpoena to compel attendance.  (*Id.* ¶¶ 14–15;

ECF No. 70-1.)  In response to Dollar Energy's arguments, Delay filed a motion requesting a meeting to clarify certain points. (ECF No. 72.)

The Court granted in part and denied in part Delay's motion and ordered an evidentiary hearing.  (ECF No. 73.)  The Court deferred any ruling on the issue of whether Delay should bear the costs of having Sutton either appear or submit a sworn statement.  (*Id.*)  The Court further ordered that although "either party may seek to present testimony or evidence from Rebecca Sutton (in person or via videoconference), they must do so initially at their own expense," and that the Court would not issue an order compelling her to appear if she refused to do so voluntarily.  (*Id.*)

On April 11, 2023, the Court held an evidentiary hearing on Dollar Energy's Motion for Sanctions.  Dollar Energy introduced into evidence Exhibit 1, which is a summary chart and supporting documents regarding the attorney's fees it incurred from March 11, 2022 to February 24, 2023 related to its motions to compel, Delay's second deposition, and issues related to Sutton. Exhibit 1 outlines the following attorneys' fees and costs:

|  | Hours | Rate | Total |
|---|---|---|---|
| Terri Patak | 23.1 | $ 297.00 | $ 6,860.70 |
| Emily Town | 67.3 | $ 267.00 | $ 17,969.10 |
| Costs |  |  | $ 524.20 |
| **Total** | 90.4 |  | $ 25,354.00 |

Although Delay objects to the award of any sanctions, he confirmed at the evidentiary hearing that he did not object or otherwise wish to respond to the calculations or reasonableness of Dollar Energy's attorneys' fees set forth in Exhibit 1.

The recorded voicemails directed to the Court's telephone number on February 3, 2023 were played during the hearing.  Delay testified that Sutton had left these voicemails due to a

dispute between them when he was trying to end their relationship.  Upon cross-examination, Delay confirmed that he recognized Sutton's voice on the voicemails.  He further testified that their dispute was not related to this lawsuit and that he generally tries to avoid dealing with Sutton as much as he can, although he admitted to talking to her as recently as a week before the evidentiary hearing.

At the end of the evidentiary hearing, Dollar Energy introduced the mp3 file that was attached to the email their counsel received from Sutton's email account.  In the mp3, an individual identifying herself as Rebecca Sutton stated that she was taking back what she had said in her voicemails to the Court because she had called the Court after becoming angry with Delay regarding her involvement in his lawsuit.  After what appeared to be a break in the audio file,[2] she also requested not to be contacted anymore.

---

[2] Dollar Energy's counsel argued that this break sounds as if two different audio files were spliced together.  The Court had a similar impression upon hearing the message played.

### 3.   Rule 37(e) Standard

Rule 37(e) sets out the standard for determining whether spoliation of ESI has occurred:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(2).  The Advisory Committee's Notes to the 2015 Amendment explain the

elements of spoliation of ESI:

> First, the spoliating party was under a duty to preserve when the loss occurred. Second, the lost ESI was within the scope of the duty to preserve.  Third, "the information was lost because the party failed to take reasonable steps to preserve" it.  Fourth and finally, because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

*Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020).

"Upon finding that spoliation occurred, the court must then determine what sanction(s) to

impose" based on Rule 37(e)(1) and Rule 37(e)(2).  *Manning v. Safelite Fulfillment, Inc.*, No. 17-

2824, 2021 WL 3557582, at *5 (D.N.J. Apr. 29, 2021).  "A court may resort to (e)(1) measures

only upon finding prejudice to another party from loss of the information.… Subdivision (e)(2),

on the other hand, does not include a requirement that the court find prejudice to the party deprived

of the information.…"  *Id*; *compare* 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e)(2)

('[A] court may resort to (e)(1) measures only 'upon finding prejudice to another party from loss

of the information.' An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation.") *with* 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e)(2) ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice").

Finally, in determining which sanction to impose, the Third Circuit's three-factor test guides district courts. *Bistrian*, 448 F. Supp. 3d at 465 n.14 (citing *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019)).   The "three factors district courts must consider when contemplating Rule 37 sanctions: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."   *GN Netcom, Inc.*, 930 F.3d at 82.

4.     The Appropriate Burden for Monetary Sanctions

As the moving party, Dollar Energy "has the burden to show that spoliation occurred and what sanctions are appropriate." *Carty v. Steem Monsters Corp.*, No. 20-5585, 2022 WL 17083645, at *4 (E.D. Pa. Nov. 18, 2022).

With respect to Rule 37(e), neither party's briefing addressed "whether the burden of proof is a preponderance of the evidence or clear and convincing evidence, and there is no clear answer." *Id.*, n.8; *see also*, *Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 4492931, at *7, n.8 (D.N.J. Jul. 25, 2018), *report and recommendation adopted as modified by* 2018 WL 4489674 (D.N.J. Sept. 19, 2018); *but see*, *Freidman v. Phila. Parking Auth.*, No. 14-6071, 2016 WL 6247470, *6 (E.D. Pa. Mar. 10, 2016) (recognizing that "some courts have applied the stricter 'clear and convincing' standard…" but declining to do so because "[w]hile we examine, in part, the state of mind of the party allegedly destroying evidence, we do not find this factor requires meeting the burden of proof by clear and convincing evidence… [and] do not find a value in the higher standard of proof upon the aggrieved party who is left trying to understand and explain facts of which it could not definitely know absent the spoliating party's admission.").

During the April 11, 2023 hearing, the Court provided the parties with an opportunity to address the applicable standard.  (*See* ECF No. 74.)  Dollar Energy acknowledged the split of authority recognized by the United States District Court for the Eastern District of Pennsylvania's decision in *Friedman v. Philadelphia Parking Authority* and noted that the applicable standard appears to vary with respect to the relief sought.  According to Dollar Energy, clear and convincing evidence typically applies in the context of dismissal and monetary sanctions, but it argued that

regardless of the standard, the merits of its motion meets both the preponderance of evidence and the clear and convincing evidence standard.  Delay contends that the clear and convincing standard should apply.  Given the parties' apparent agreement that the appropriate standard for the relief sought by Dollar Energy (attorney's fees) is clear and convincing evidence, the Court will apply that standard.

Based upon a review of both parties' briefing, accompanying documentation, and the record as a whole, it is evident that, under the clear and convincing evidence standard, spoliation of ESI occurred in this case.

5.    Facts Related to Delay's Spoliation of Electronic Evidence

Dollar Energy's Motion alleges that Delay attempted to "intentionally conceal his communications and admissions concerning the claims in his lawsuit against DEF, and the identities of the individuals to whom he made these statements."  (ECF No. 55 ¶ 36.)

At the evidentiary hearing on April 11, 2023, Delay acknowledged that in his March 4, 2022 deposition, he refused to reveal social media messages on the grounds of privacy.  However, he claims that as soon as the Court notified him that he could not withhold discovery materials on such grounds, he complied with all of his discovery obligations going forward.  (*See* ECF No. 60 ¶¶ 37, 41 (noting that he "had privacy concerns and exhibited hesitancy with respect to revealing personal, private information of individuals not involved in the litigation," but did so immediately after "the Court explained to the Plaintiff his obligation to comply").)

According to Delay's March 4, 2022 deposition testimony, he had sent approximately 20–30 Facebook messages related to the allegations in his Complaint and discussed "the situation,

what [he] thought, how [he] felt about it, how [he] felt like they discriminated against [him] and, you know, just how [the case is] progressing and things like that."  (ECF No. 55-8 at 191:10–13; ECF No. 26-4 at 192:7–11.)

When he was asked at his deposition whether he had "delete[d] anything from [his] Facebook account that [he] posted that's related to the Complaint," Delay testified that he had not done so, and further committed to preserve anything going forward.  (ECF No. 55-8 at 191:1–3 ("Not deleted.  I mean, no, I just said that I sent the messages to my friends.  I didn't delete anything, I don't believe."); *id.* at 55-8 at 197:7–8 ("From this day forward, I will preserve anything.").)

Three days later, on March 7, 2022, in response to Dollar Energy's request for production targeting the Facebook messages discussed, Delay responded that he was "unable to comply. Messages sent between Plaintiff, family and friends were in the form of direct messages which has [sic] since been deleted. Plaintiff has ceased all written communication on social media until the conclusion of these legal proceedings."  (ECF No. 26-5 at 2; ECF No. 26-6 at 2 ("All communication on Facebook was in the form of direct messages which Plaintiff no longer have [sic] in his possession. Plaintiff always deletes messages immediately or before logging out of his Facebook account.").)  Delay attempts to explain this discrepancy by comparing his "public posts" on Facebook (which he never deletes) and his "private, direct messages" on Facebook (which he "always" deletes "before logging out of the platform.")  (ECF No. 60 ¶ 42.)

Due to the discrepancy between Delay's testimony and his discovery responses, Dollar Energy filed a Motion to Compel, and a telephone conference was held on May 6, 2023.  (ECF

No. 30.)  Delay was ordered to provide information related to the persons with whom he communicated regarding his lawsuit.  (*Id*.)  At that conference, Delay also identified, for the first time, an individual named Rebecca Sutton as someone to whom he sent emails so that she could distribute them to individuals in order to fundraise for his lawsuit.  (*Id*.)  Thus, Delay was also ordered to retrieve information that was sent to Sutton.  (*Id.*)

On the last day of the extended discovery period, Delay sent Dollar Energy five emails from Sutton.  (ECF No. 55 ¶ 4; ECF Nos. 55-1, 55-2, 55-3; ECF Nos. 59-16, 59-17, 59-18, 59-19, 59-20; ECF No. 34 ¶ 4.)  Defendant then filed a motion that, in part, sought to reopen discovery. (ECF No. 34.)  The Court extended discovery to allow Dollar Energy to reopen Delay's deposition and serve written discovery related to emails about this lawsuit, including emails received by Sutton.  (ECF No. 38.)  In doing so, the Court found that Delay "has demonstrated a pattern of impeding discovery, and his belated production of information, which was done only after the issuance of a court order, has frustrated the full and complete disclosure of information."  (*Id.* at 3.)

Delay responded to Dollar Energy's discovery requests regarding such emails by stating that he was "not in possession of requested documents. Plaintiff has not been given any such documentation."  (ECF No. 39-3; *see also id.* ("Rebecca Sutton has not provided the Plaintiff with any documents.").)  When Dollar Energy asked Delay to search his email account, he stated that his "gmail account has filters set to delete messages after a specified period of 30 days. I have researched manually all folders in the account and no messages exist."  (ECF No. 39-5.)

The same day, Delay produced an email from Rebecca Sutton stating that she would not turn over any other emails, text messages, or social media messages addressed to her without a Court order from a Canadian court. (ECF No. 55-13; ECF No. 39-6)  Dollar Energy then moved to compel production of the documents, to reopen his deposition, and to shift the cost of retaining Canadian counsel fees for a letter rogatory to Delay. (ECF No. 39.)

Following a hearing on Dollar Energy's Motion to Compel, Delay was ordered to produce "all written communications, including emails, text messages and messages sent through any social media, between him and Rebecca Sutton since July 2021 that relate to his claim, to Defendant or to any other matter related to his lawsuit," and the Court allowed Defendant to reopen Delay's deposition. (ECF No. 45.)   The Court denied Dollar Energy's motion to the extent it sought to compel Delay to undertake further efforts to obtain documents from Sutton. (*Id*.)  Delay was also ordered to bring an electronic device to his reopened deposition. (*Id.*)

During the second deposition, Delay's electronic device was only able to show current messages within a short time period from his email account, and he claimed he did not know how to change the settings, search for other emails, or otherwise manipulate the email account on his tablet. (ECF No. 55-11 at 10:13–18:23; *but see*, ECF No. 39-5 (Delay certifying in discovery that he has "researched manually all folders in the account and no messages exist.").)

Ultimately, as Dollar Energy's counsel pointed out during the evidentiary hearing on April 11, 2023, the extent of electronic messages and discovery recovered (despite repeated discovery disputes) was limited to five emails from Sutton.  No other emails or Facebook messages were ever recovered.

6. <u>Dollar Energy Has Met Their Burden to Prove that Spoliation of ESI Occurred</u>

The Court concludes that spoliation of electronic data, specifically in the form of 20-30 Facebook messages discussing Delay's thoughts on the case and emails to and from Sutton regarding Delay's case and fundraising efforts, has occurred.

First, Delay was under a duty to preserve the information lost when he filed his initial inquiry for his EEOC charge on March 2, 2020 (*see* ECF No. 59-13).   *AMG Nat'l Trust Bank v. Ries*, No. 06-CV-4337, 2011 WL 3099629, at *4 (E.D. Pa. July 20, 2011) ("A party that reasonably anticipates ensuing litigation has an affirmative duty to preserve evidence that may be relevant." (citations omitted)); *cf. Tabon v. University of Pennsylvania Health System*, No. 10-2781, 2012 WL 2953216, at *2 (E.D. Pa. July 20, 2012) ("In employment discrimination cases, a duty to preserve arises when the defendant receives notice of an EEOC charge.").   For example, the five emails sent by Sutton to potential donors (ECF No. 59-16 (May 14, 2021); ECF No. 59-17 (August 10, 2021); ECF No. 59-18 (July 12, 2021); ECF No. 59-19 (February 3, 2022); ECF No. 59-20 (December 23, 2021)) postdate his EEOC proceedings and three of them postdate the filing of this case.

In addition, the lost ESI was within the scope of the duty to preserve, as these emails discussed Delay's thoughts on his claims and the status of the case, and the Facebook messages similarly explained his thoughts on this case.

Moreover, "the information was lost because [Delay] failed to take reasonable steps to preserve" them—not changing his alleged deletion habits regarding his Facebook messages and his email filter represents a failure to take reasonable steps to preserve such electronic discovery.

Finally, despite multiple efforts by Dollar Energy, other than the five emails from Sutton, no other emails or responses regarding Delay's updates on his case to potential donors and no Facebook messages have been recovered, such that the information appears "truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 465.

Having determined that ESI spoliation occurred, the Court turns to whether Dollar Energy has proven that Delay acted with bad faith under Rule 37(e)(2).

> 7. <u>Dollar Energy Has Met Their Burden to Prove That Delay Acted with Intent to Deprive Dollar Energy of the Information Use in this Case</u>

Under Rule 37(e)(2), a spoliating party acts in bad faith when he acts "with the intent to deprive another party of the information's use in the litigation." *Bistrian*, 448 F. Supp. 3d at 475 (citing Fed. R. Civ. P. 37(e)). "Because courts are unable to 'examine [a party's] head' to 'confirm [whether they] acted in bad faith,' courts look to circumstantial evidence to determine intent." *Id.* at 476.

Here, the Court finds that despite Delay's *pro se* status, he understood the nature and scope of his discovery obligations (and was further reminded of them both by the Dollar Energy's counsel during his first deposition and by the Court during hearings on Dollar Energy's motions to compel). Throughout this case, Delay has competently responded to both procedural and substantive issues, articulated complex legal concepts, performed his own case law research, and addressed key issues during oral argument.

In considering the record as a whole, which includes the two hearings addressing Dollar Energy's motions to compel, the briefing and evidentiary record associated with such motions and the pending motion for sanctions, as well as Delay's testimony at the April 11, 2023 evidentiary

hearing, the Court cannot ignore Delay's pattern of shifting responses regarding the existence of certain documents and reasons why they cannot be produced.  Because he was not forthright with respect to the evidence that existed in his possession and the communications he had had regarding this lawsuit (including, but not limited to, those with Sutton), Dollar Energy was required to file repeated motions to compel only to be provided with five emails.  While these emails were not dispositive to Dollar Energy's Motion for Summary Judgment, they significantly call into question Delay's motivation and reasons for filing this suit and were detrimental to Delay's prosecution of his action.  Further, Delay is well aware of his discovery obligations, having himself made changes to his communication patterns until the *end of discovery* to avoid further disclosure.[3]

Considering the record as a whole, Delay's knowledge of the discovery process combined with a pattern of contradictory statements and attempts to backtrack or dance around prior statements demonstrate to the Court by clear and convincing evidence that Delay has "with the intent to deprive" Dollar Energy "of the information's use in the litigation."  *Bistrian*, 448 F. Supp. 3d at 475 (citing Fed. R. Civ. P. 37(e)).

---

[3] *See* ECF No. 26-5 at 2 ("Plaintiff has ceased all written communication on social media until the conclusion of these legal proceedings."); ECF No. 59-19 ("Like I said in a previous update, Rebecca and I will be setting up a website sometime in mid-March at the conclusion of discovery."); ECF No. 59-20 ("The discovery phase of this case ends in early March, 2022. At that time, we will get a website and publicize this case."); ECF No. 59-22 at 9:50–11:53 ("I'll get more into detail about that after discovery is over, right now I just want to give a brief update … In that video I will go into great, great, detail about what happened, because I think that people should know.  I want to make it clear that I had no idea or desire to really make this thing public.  The only reason I'm not going all out right now in public is because we are in discovery, and anything that—you know—that I say, or any response that I might receive, I have to turn over to Dollar Energy Fund, and I simply don't want to do that.   It's none of their business what people communicate to me about this issue.  So I'm asking all of you, not to send me any emails or any donations or anything like that until after September 13.  I'm going to definitely need donations."); *id.* at 15:14–32 ("If you send me any messages, send them publicly either on my Youtube channel or on the website, do not send me or Rebecca Sutton any type of private messages or donations at this point in time.  Wait until after September 13, 2022 to do that."); *see* ECF No. 45 (extending fact discovery period until September 12, 2022.).)

Finally, the Court acknowledges that the voicemails left by Sutton for the Court and the contradictory mp3 file emailed to Dollar Energy's counsel are all unsworn, and Sutton was not present for the evidentiary hearing. The Court cannot determine which of these narratives, if any, are true in light of their unsworn nature. Thus, while this evidence is not dispositive to the Court's finding of bad faith, the obvious contradictions between these messages serves only as another example of what has appeared to be a continuing moving target for Dollar Energy's request for information about Delay's claims in this case.

8. Determination of the Appropriate Sanction against Delay, a *Pro Se* Litigant Proceeding *In Forma Pauperis*

Having determined that Delay violated Rule 37(e)(2), the Court now turns to the appropriate sanction to impose.

First, as detailed above, the Court finds that despite Delay's alleged unfamiliarity with his discovery obligations, his pattern of behavior during discovery was in bad faith, such that he is at fault for the failure to preserve the relevant ESI and Dollar Energy's inability to recover such information by other means.

Next, the Court turns to the prejudice suffered by the opposing party by Dollar Energy. Dollar Energy has expended considerable time and energy in seeking this information and would not have had to do so but for Delay's failure to comply with his ESI preservation obligations. (*See* Exhibit 1 of April 11, 2023 evidentiary hearing.) Further, based on the five emails that were in fact recovered and Delay's description of the other unrecovered communications, it would appear that the other emails or messages would be related to Delay's strategy in pursuing a race discrimination claim rather than a disability discrimination claim. While any such messages would

not be related to the facts underlying his disparate impact claim, the messages that were recovered strongly suggest that those that were not recovered would be relevant (and likely detrimental to) Delay's credibility had this case survived summary judgment.  In essence, there was prejudice suffered by Dollar Energy as a result of Delay's actions.

Finally, the Court will consider "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  *GN Netcom, Inc.*, 930 F.3d at 82.  The Court finds this factor to be the relevant place to analyze whether (and, if so, when) monetary sanctions of *pro se* litigant *in forma pauperis* are appropriate.

Typically, courts find that where a plaintiff is proceeding *in forma pauperis*, monetary sanctions are ineffective, and thus courts usually conduct an analysis of the *Poulis* factors to determine whether dismissal of a case is appropriate in response to discovery violations.  *See Pik v. Univ. of Pa.*, 457 F. App'x 122, 124–25 (3d Cir. 2012) (affirming district court's decision to dismiss a case with prejudice as a sanction under Rule 37 for plaintiff's "failure to answer interrogatories, his refusal to sign authorizations [] records, and his refusal to make himself available for a deposition" pursuant to the factors outlined in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)).

Here, for the reasons set forth in the concurrently filed Opinion and Order granting Dollar Energy's Motion for Summary Judgment, this case will be dismissed on the merits; thus, the sanction of dismissal is ineffective.  *See Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir.

2002) ("dismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits.")

Although a review of the case law shows that instances of imposing monetary sanctions on a plaintiff proceeding *in forma pauperis* remain somewhat infrequent, "[a] party's indigent status does not, alone, preclude the Court from assessing expenses." *Jumpp v. Jerkins*, CIV. 08-6268 RBK/KMW, 2011 WL 5325616, at *3 (D.N.J. Nov. 3, 2011); *Dooley v. Wetzel*, No. 3:18-cv-01310, 2022 WL 1597834, at *4 (M.D. Pa. May 19, 2022) ("plaintiff's financial indigency does not exempt him from this discovery sanction."); *Bosworth v. Record Data of Md., Inc.*, 102 F.R.D. 518, 521 (D. Md. 1984) ("A flat *per se* policy against the imposition of sanctions under Federal Civil Rule 37 upon any party who is financially indigent does not accord with the purposes of that rule and would open the door to many possible abuses."); *Toner v. Wilson*, 102 F.R.D. 275, 276 (Md. Pa. 1984) (noting that "while [plaintiff's] poverty may present the [defendants] with a problem in collecting any award, [plaintiff's] poverty does not make an award of expenses unjust" and further that "several courts have expressed their agreement with the proposition that a party's indigency is irrelevant to an award of expenses under Rule 37."); *see also*, *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989) ("If a pro se litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant. Courts can assess costs and monetary sanctions against IFP litigants."); *Bernard v. Ricketts*, 988 F.2d 117, 1993 WL 51197, at *1 (9th Cir. Feb. 26, 1993) ("[T]he district court could have assessed monetary sanctions against [plaintiff] despite his apparent poverty."); *Isaac v. American Intercontinental University*, No. 1:05-CV-2839-JEC, 2007 WL 1959201, at *6 (N.D. Ga. June 28, 2007) ("The Court can assess costs and monetary sanctions

23

against plaintiff, in spite of her IFP status."); *Woliner v. Sofronsky*, No. 18-CV-80305, 2019 WL 163340, at *4 (S.D. Fla. Jan. 10, 2019) (concluding that "[c]ourts can assess costs and monetary sanctions against IFP litigants," but noting that "[w]here monetary sanctions are imposed on an in forma pauperis litigant and the litigant comes forward showing a true inability to pay, it might be an abuse of discretion for the court then to dismiss for failure to pay.").

Faced with a *pro se* litigant proceeding *in forma pauperis* who has demonstrated bad faith with respect to the spoliation of ESI, the Court carefully balances two key considerations in order to determine "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party," and whether the sanction, in light of Delay's bad faith, "will serve to deter such conduct by others in the future." *GN Netcom, Inc.*, 930 F.3d at 82.

On one hand, the rational of Rule 37 supports the application of a monetary sanction in this case:

> To accept indigence as a reason for not applying a Rule 37 sanction of attorney's fees would undermine the purpose of the rule. Rule 37 sanctions are penalties for violating the discovery rules, and such penalties are meant to deter future conduct and compensate for the collateral damage that, by a party's actions, is levied on a party that must move to enforce the rule. The failure to sanction indigent plaintiffs can only result in incentivizing abuse of the discovery system because they can impose costs upon their opponents without fear of recompense.

*Jumpp*, 2011 WL 5325616, at *3.  Here, despite his status as a *pro se* litigant, Delay has shown himself to be proficient in handling aspects of his case and understanding nuanced issues.  Despite being given multiple opportunities to comply with his electronic discovery obligations, he continued to provide contradictory and evasive responses and testimony with respect to such discovery.

The Court has considered Exhibit 1 from the April 11, 2023 evidentiary hearing, which details $24,829.80 in attorneys' fees and $ 524.20 costs associated with reopening Delay's second deposition.  Delay did not object and did not seek to respond to the reasonableness or calculations of attorneys' fees in Exhibit 1.

At the same time, in a non-precedential opinion, the United States Court of Appeals for the Third Circuit has warned that "further consideration is required before imposing sanctions that would appear to subject a pro se litigant to 'financial ruin,'" *Am. Bd. of Surgery, Inc. v. Lasko*, 611 F. App'x 69, 73 (3d Cir. 2015) (citing *Doeringv. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 196 (3d Cir. 1988)); *cf. id.* ("we have held in the Rule 11 context that, in fashioning appropriate sanctions, courts should consider a party's financial resources and ability to pay."). Delay's motion for leave to proceed *in forma pauperis* does not indicate that he has any income (ECF No. 1), and he has not presented any updated information with respect to his financial situation.

However, the record shows that Delay, through his fundraising efforts via Sutton, has received at least $3,200 during this case.  (*See* ECF No. 39-3 (responding "Rebecca Sutton sent Plaintiff $3,000 via Pay Pal" in response to a request for production as related to funds to support your lawsuit); ECF No. 55-11 at 55:11–22 ("Q: How much money have you received in response to your requests for donations to this litigation effort? A. Well, Rebecca Sutton gave me about $3,200. Q. Why did you say only 3,000 before? A. Well, you know what, I said 3,000. Then when I looked at it, it said 200. I just rounded it off."); ECF No. 59-19 (stating in an email "Please

consider donating to my legal expenses. Rebecca loaned me $3,000 and she said she is willing to give me more, but any thing [sic] you can contribute would help.")

Having carefully considered all of the relevant factors, the Court will grant in part and deny in part Dollar Energy's motion for sanctions. Sanctions will be imposed against Delay in the amount of $3,200.00, the funds raised to support his lawsuit, **plus** $524.20 in costs incurred by Dollar Energy associated with reopening Delay's second deposition, for a total of $ 3,724.20.

### III.    Conclusion

For these reasons, the Court hereby GRANTS in part and DENIES in part Dollar Energy's Motion for Sanctions (ECF No. 55).

IT IS HEREBY ORDERED that on or before May 31, 2023, Delay shall pay to Dollar Energy the sum of $ 3,724.20.

Dated: May 1, 2023                     BY THE COURT:


                                       /s/ Patricia L. Dodge
                                       PATRICIA L. DODGE
                                       UNITED STATES MAGISTRATE JUDGE