**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IRWIN DELAY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:21-cv-1037 |
| | ) | Magistrate Judge Patricia L. Dodge |
| DOLLAR ENERGY FUND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION[1]

Pending before the Court is Defendant Dollar Energy Fund's Motion for Summary Judgment (ECF No. 56) and Motion in Limine to Exclude Any Evidence Concerning Rebecca Sutton from Consideration Concerning the Merits of Plaintiff's Claim or Defendant's Motion for Summary Judgment (ECF No. 71). For the reasons that follow, the Motion for Summary Judgment will be granted and the Motion in Limine will be denied as moot.

## I.   Relevant Procedural Background

*Pro se* Plaintiff Irwin Delay ("Delay") commenced this action in August 2021 against Defendant Dollar Energy Fund ("Dollar Energy"). In his Complaint, Delay alleges that Dollar Energy engaged in disparate impact discrimination on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and violated Pennsylvania's Criminal History Records Information Act, 18 Pa. C.S.A. 9101 *et seq.* ("CHRIA"). (ECF No. 4.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

After several discovery disputes and extensions of time, fact discovery closed on September 12, 2022.  (ECF No. 45.)  Dollar Energy subsequently filed its Motion for Summary Judgment (ECF No. 56) which has been fully briefed.

## II.    Factual Background

The following facts, drawn from the concise statement of material facts and responses thereto (ECF Nos. 58, 62, 63, and 66), are undisputed unless otherwise noted.

### A.    <u>Delay's Application to Dollar Energy Fund</u>

Dollar Energy Fund is a 501(c)(3) organization providing utility assistance and other services that lead to self-sufficiency.  (ECF No. 62 ¶ 1.)  It held open interviews for customer service representatives on December 17, 2019.  (*Id.* ¶ 4.)  Delay attended the open interviews and met with Elise DeMarco, Dollar Energy's Human Resources Manager.  (*Id.* ¶ 6.)  Delay brought an acquaintance to the open interview who assisted him with completing the written application because he is blind.  (*Id.* ¶ 7; ECF No. 66 ¶ 1.)

The application asks an applicant to list all felony and misdemeanor convictions and states that "[a] conviction will not necessarily disqualify an applicant from employment.  Each conviction is considered on a case-by-case basis subject to an individualized assessment.  A conviction which is substantially related to the job for which you are applying may be taken into consideration in accordance with applicable federal, state, and local law."  (ECF No. 62 ¶ 8; ECF No. 59-4 at 5; ECF No. 66 ¶ 6.)  In response to this question, Delay answered "yes" and listed one conviction in 1999 in Minnesota for violating a restraining order.  (ECF No. 62 ¶ 9; ECF No. 59-4 at 5.)   Based on Delay's interview and application for employment, Dollar Energy offered him

job, "contingent upon completion of a pre-employment drug screening, criminal background investigation and reference." (ECF No. 62 ¶ 10 (citing ECF No. 59-5).)

### B. Discovery of Supplemental Convictions during Background Check and Delay's Subsequent Termination

A criminal background check was performed by an outside agency. (*Id.* ¶ 15 (citing ECF No. 59-9).) Contrary to Delay's attestation on his application that his only conviction was violating a restraining order in 1999, the criminal background check revealed that Delay had several criminal convictions that he failed to disclose on his application, including convictions for credit card fraud, theft-by-check, multiple violations of restraining orders, and telecommunications harassment. (*Id.* ¶ 16.) Further, the most recent criminal conviction revealed in Delay's background check was from 2006, not 1999. (*Id.* ¶ 17.)

The background check agency verified with Delay that his criminal history was accurate prior to reporting the results to Dollar Energy. (*Id.* ¶ 18 (citing ECF No. 59-9 (noting that the agency spoke with Delay, who verified that he was aware of each criminal conviction reported against him)).) Delay also admits that each of the convictions revealed in his criminal background charge are accurate and that he failed to include many of these in his application, including his most recent conviction from 2006. (*Id.* ¶¶ 50–51.)

Dollar Energy sent Delay a pre-adverse action letter to provide him a chance to explain the discrepancy between the application and the background check. (*Id.* ¶ 19 (citing ECF No. 59-10).) As explained on the application and restated in the letter, omission or falsification of criminal history information on the application for employment could lead to Dollar Energy revoking Delay's job offer. (*Id.* ¶ 20.)

3

Delay told Dollar Energy he had been "caught off guard and unprepared" to answer the question about his criminal convictions on his employment application—and that he forgot the details about some his convictions.  (*Id.* ¶ 21.)  Delay did not explain the circumstances surrounding any of the convictions.  (*Id.* ¶ 22.)

Delay testified that at the time he was completing the application, he remembered his 1999 conviction for violating a restraining order and his 2006 conviction for telecommunications harassment, but only the 1999 conviction was included on the application.  (*Id.* ¶ 24.)  Delay further testified that "[a]fter all, I knew [Dollar Energy] would conduct a criminal background check. I also knew that the Pennsylvania Clean Slate Law would cover all of my previous convictions, so perhaps I was not as diligent as I should have been about recalling my criminal history."  (*Id.* ¶ 25; *but see id.* ¶ 23 (disputing that "he believed that "Pennsylvania's Clean State law" or a 'ban the box' law would conceal the convictions" and that he "did not say or believe that he did not have to report the convictions on the application.")[2]

Dollar Energy rescinded Delay's job offer and did not employ him as a customer service representative.  (*Id.* ¶ 26 (citing ECF No. 59-12).)

**C.      Delay's EEOC Action**

Thereafter, Delay contacted the Equal Employment Opportunity Commission by phone stating that "I was not extended employment due to my disability. I believe that the employer is unwilling to provide me with reasonable accommodation for the job."  (*Id.* ¶ 27.)  When asked for

---

[2] Pennsylvania allows an individual to not "disclose information about the individual's criminal history record that has been expunged or provided limited" access under § 9122.1 (relating to petition for limited access) or 9122.2 (relating to clean slate limited access)." 18 Pa. Cons. Stat. Ann. § 9122.5.  However, Delay's convictions are all from jurisdictions outside of the Commonwealth of Pennsylvania.  (*See* ECF No. 59-9.)

the reason he was given "for the action taken against [him,]" Delay told the EEOC "[t]he employer withdrew the job offer claiming that the information on my application is inconsistent with information in my background check report." (*Id.* ¶ 28.)  Although Delay indicated his ethnicity was "Black or African American," he made no allegations noted on the Intake Inquiry Form related to race discrimination, other than the fact that Dollar Energy "claimed that their removal of the offer was due to the results of [his] background check" (which Delay admits showed "some criminal activity" that "is at least 23 years old"), but argues that "there is no legitimate business reason as to why [he] could not provide customer service over the phone." (*Id.* ¶¶ 29–30; *see also* ECF No. 59-14 at 3.)  Within his December 22, 2020 correspondence to the EEOC responding to Dollar Energy's Position Statement, Delay made no statement indicating that his race was the reason Dollar Energy rescinded his job offer; instead, he again claimed Dollar Energy did not want to accommodate his disability.  (ECF No. 62 ¶ 31.)

In fact, throughout the EEOC process, the overwhelming majority of Delay's assertions relate to his claim that Dollar Energy did not wish to provide reasonable accommodations rather than his race discrimination claim.  (*Id.* ¶¶ 29, 31, 33.)  When addressing the discrepancies regarding his criminal history, Delay only argued that Dollar Energy should not have considered the convictions because of when they happened, and that the convictions were not related to his potential job as a customer service representative because he would not have access to sensitive customer information.  (*Id.* ¶¶ 30, 32.)

D.    **Delay's Public Statements Regarding This Action**

During the course of this litigation, Delay also sent a series of emails[3] concerning his intent to pursue claims against Dollar Energy after it revoked the job offer.  (ECF No. 62 ¶ 34)   These emails reiterated his belief that "that the reason for the denial of employment was due to their refusal to provide reasonable accommodation with respect to my blindness. The criminal history was simply a convenient excuse."  (ECF No. 62 ¶¶ 35, 40.)   Delay also published two videos[4] on YouTube in which he repeated this belief.  (*Id.* ¶¶ 44–45 (citing ECF Nos. 59-22, 59-23)).

Delay's discussion of his race discrimination claim in certain emails and videos is brief and limited to his argument that Dollar Energy's failure conducted an individualized assessment of his criminal history resulted in disparate impact[5].  (*Id.* ¶¶ 36–39, 43, 46–47, 49, 52.)

---

[3] These emails were sent from Delay's email address to an email address for an individual named "Rebecca Sutton." As articulated in the concurrently filed Opinion and Order on the Motion for Sanctions, the Court received two voicemails from an individual identifying herself as "Rebecca Sutton," and held an evidentiary hearing on Defendant's Motion for Sanctions where Delay testified as to Sutton's involvement in the case and Dollar Energy presented another mp3 file that they had received from Sutton.  (ECF Nos. 67, 68, 69, 73, & 74)  Any questions regarding Sutton's alleged involvement in these emails are not relevant to the disposition of Dollar Energy's Motion for Summary Judgment.  Thus, Dollar Energy's Motion in Limine to Exclude Any Evidence Concerning Rebecca Sutton from Consideration Concerning the Merits of Plaintiff's Claim or Defendant's Motion for Summary Judgment (ECF No. 71) will be denied as moot.

[4] These videos are no longer available on the Youtube links, but the Court received a copy of the exhibits from Dollar Energy.  (ECF No. 61.)

[5] "I am accusing [Dollar Energy] of disparate impact discrimination, meaning that their actions were unintentional, but discriminatory nevertheless. Because Dollar Energy Fund used my criminal history against me, I am claiming that it is discriminatory because arrests, convictions, and incarceration occur in a higher rate among People of Color in the United States."  (ECF No. 62  ¶ 39; *see also id.* ¶¶ 37–38.)

### III.   Legal Standard

As the Federal Rules of Civil Procedure provide, summary judgment must be granted if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which shows the lack of a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Id.* (internal citation omitted).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor.  *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial.  *See*, *e.g.*,

*Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law").

## IV. Discussion

### A. This Action Does Not Involve Any Disability-Related Claims

Delay has repeatedly claimed after commencing this litigation that he is "convinced that [Dollar Energy] took back the job offer because they did not want to provide a reasonable accommodation for me in assisting in filling out the job paperwork."  (ECF No. 62 ¶ 40.) Significantly, however, this lawsuit has never included any claim related to Dollar Energy's termination of the job offer due to Delay's disability.  (ECF No. 59-17 at 3 (Delay explaining the claims in this action to third parties by stating "[t]wo individuals told me that [a reasonable accommodation to assist in filling out paperwork] posed a problem in the hiring process. Unfortunately, I am unable to locate the two individuals in order to prove this point. As a result, I thought it judicious to leave this out of the lawsuit.")

In fact, a review of the documents in this case shows that this action and the corresponding issues at summary judgment are narrow.  Further, much of the material facts are undisputed.  (*See generally*, ECF Nos. 58, 62, 63, 66).

**B.**     **Dollar Energy is Entitled to Summary Judgment on the Claim of Disparate Impact under Title VII**

  1. Clarification of Delay's Title VII Claim

The characterization of Delay's first claim under Title VII requires some clarification, because Dollar Energy's Motion for Summary Judgment brief addresses both disparate treatment (*see* ECF No. 57 at 5–8), and disparate impact (*see id.* at 8–10).  As explained by the Third Circuit:

> The distinction between disparate impact and disparate treatment lies in the disparate-treatment requirement that the discrimination be intentional. Title VII's disparate-treatment provision forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Disparate treatment "occur[s] where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci* [*v. DeStefano*, 557 U.S. 557, 577 (2009)] (first alteration in original) (quoting *Watson* [*v. Fort Worth Bank & Tr.*], 487 U.S. [977, 985–86 (1988)]). The plaintiff must prove that the employer had a "discriminatory intent or motive." *Watson*, 487 U.S. at 986. Where the employment action was based on a non-discriminatory reason, disparate treatment is, by definition, lacking.

*NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 482 n. 11 (3d Cir. 2011).

  Although a *pro se* plaintiff's filings must be liberally construed, it is clear from Delay's pleadings and statements in (and about) this case that he understands the distinction between disparate treatment and disparate impact claims and that he is asserting only a disparate impact claim against Dollar Energy.  (*See* ECF No. 4 at 4 ("The Plaintiff alleges that the Defendant engaged in disparate impact discrimination against the Plaintiff on the basis of race. The Defendant failed to conduct an Individualized Assessment on the Plaintiff as mandated by federal, state, and local laws."); ECF No. 59-17 at 2 ("[Title VII] prohibits employers from discriminating based on race, color, religion, sex or national origin. This includes disparate treatment and disparate impact.

9

The difference between disparate impact and disparate treatment is that disparate treatment is intentional discrimination, while disparate impact is unintentional. I am accusing [Dollar Energy] of disparate impact discrimination, meaning that their actions were unintentional, but discriminatory nevertheless. Because Dollar Energy Fund used my criminal history against me, I am claiming that it is discriminatory because arrests, convictions, and incarceration occur in a higher rate among People of Color in the United States."); ECF No. 64 at 5–6 (arguing that "[t]hroughout their motion, the Defendant has used arguments which applies to disparate treatment cases, not cases based on disparate impact. For instance, the Defendant claims that the *McDonald Douglas* formula applies in this case. This is inaccurate. The *McDonald Douglas* burden shifting formula is for disparate treatment, not disparate impact…. The Defendant claims that the burden is on the Plaintiff to prove intentional discrimination. Once again, the Defendant is relying on disparate treatment formulation as opposed to disparate impact requirements."); *see also* ECF No. 60 ¶¶ 12–13 (Delay arguing that he wanted the audience to "understand the legal definition between disparate treatment and disparate impact discrimination" when he said that his "charge against Dollar Energy is somewhat difficult to explain" and he could not say that "[Dollar Energy] is racist").)

Because Delay's claims have never included a claim for disparate treatment, the Court need not consider Dollar Energy's motion for summary judgment on that ground and will only address Delay's Title VII claim under theory of disparate impact.  (*See also* ECF No. 66 at 1 ("Plaintiff concedes that he does not have a claim for intentional disparate treatment discrimination").)

This leaves open a question of how to define the Dollar Energy employment practices that Delay is challenging on the grounds of disparate impact.  This question will be addressed in Section IV.B.3 (Delay Fails to Adduce Facts Sufficient to Establish His Prima Facie Case of Disparate Impact) below.

2.   Title VII's Disparate Impact Framework

Under Title VII, it is unlawful for an employer to discriminate against an applicants based on their race, color, religion, gender, or national origin.  42 U.S.C. § 2000e–2(a)(2).  "Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race."  *Hudson*, 665 F.3d at 476  (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988); *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998)); *see* 42 U.S.C. § 2000e-2(k)(1)(A)(i).

Thus, "[d]isparate-impact litigation proceeds in three steps."  *Hudson*, 665 F.3d at 476.  "First, a plaintiff must establish a prima facie case by demonstrat[ing] that application of a facially neutral standard has caused a significantly discriminatory hiring pattern."  *Id.* (internal citations and quotations omitted).  After establishing a prima facie case, "[t]he employer may defend against a prima facie showing of disparate impact only by demonstrating that the challenged practice is 'job related for the position in question and consistent with business necessity.'"  *Id.* at 477 (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)).  "Finally, a plaintiff can overcome an employer's business-necessity defense by showing that alternative practices would have less discriminatory effects while ensuring that candidates are duly qualified."  *Id.* (citing 42 U.S.C. § 2000e-2(k)(1)(A)).

11

3.      Delay Fails to Adduce Facts Sufficient to Establish His Prima Facie Case of Disparate Impact

"A prima facie case of disparate impact discrimination has two components." *Stagi v. AMTRAK*, 391 F. App'x 133, 136 (3d Cir. 2010).  "First, a plaintiff must identify 'the specific employment practice that is challenged.'" *Id.* (quoting *Watson*, 487 U.S. at 99).

"'[O]nce the employment practice at issue has been identified, causation must be proved.'" *Meditz v. City of Newark*, 658 F.3d 364, 371 (3d Cir. 2011) (quoting *Watson*, 487 U.S.at 994–95); 42 U.S.C. § 2000e-2(k)(1)(A)(i) (plaintiff must show that the employment practice "causes a disparate impact on the basis of race, color, religion, sex, or national origin."); *Stagi*, 391 F. App'x at 136.  In essence, plaintiff must "prove a significant statistical disparity and [] 'demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking.'" *Hudson*, 665 F.3d at 477 (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989)).  To do so, "plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. [These] formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation."[6] *Meditz*, 658 F.3d at 371 (quoting *Watson*, 487 U.S. at 994–95).

---

[6] Although "[i]t is possible for a plaintiff to make a prima facie case based on statistics alone and without statistical analysis, but that is only in rare cases when there is a 'significant statistical disparity' between classes." *Green v. City of Phila.*, No. 21-1034, 2022 WL 1165644, at *3 n.2 (3d Cir. Apr. 20, 2022) (citing *Ricci*, 557 U.S. at 587); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307–08 (1977) ("[w]here gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination.").

> a.    The Challenged Employment Practice Is the Failure to Conduct an Individualized Assessment When an Applicant Has Not Accurately Reported His Criminal History on an Application

First, the Court must identify the specific employment practice that is challenged.  The parties differ on how to characterize the employment practice at issue.

Dollar Energy identifies several different practices: their "requirement that applicants provide honest and accurate information on their job applications" and their "requirement that job applicants must provide their complete criminal history on the application for employment." (ECF No. 57 at 9).

Delay argues that "[t]he issue in controversy revolve[s] around the reason [Dollar Energy] chose to withdraw the job offer" and that Dollar Energy "gave two reasons for rescinding the job offer, one being [Delay's] criminal convictions," the other being Delay's falsification of his job application with respect to criminal convictions.  (ECF No. 64 at 2.)  Delay makes several formulations of the employment practice at issue, including Dollar Energy's failure "to conduct an Individualized Assessment on [Delay] as mandated by federal, state, and local laws" (ECF No. 4 at 4) and "Dollar Energy [] us[ing] [his] criminal history against [him]," which he alleges is "discriminatory because arrests, convictions, and incarceration occur in a higher rate among People of Color in the United States."[7]  (ECF No. 59-17 at 2.)

---

[7] Another variation of Delay's challenged practices alleges that Dollar Energy failed to provide him with "due process." (ECF No. 64 at 1 ("The Plaintiff asserts that the Defendant improperly rescinded the job offer of the Plaintiff by denying him due process protection under recommended Federal guidelines and mandated Pennsylvania state law.")).   However, the Court does not construe Delay's pleadings as bringing a constitutional due process claim, because due process under "the Fourteenth Amendment applies only to acts under color of state law" and due process under "the Fifth Amendment applies to actions of the federal government." *B&G Constr. Co. v. Dir.*, OWCP, 662 F.3d 233, 246 n. 14 (3d Cir. 2011) (citing U.S. Const. amend. V and U.S. Const. amend. XIV, § 1).)  Neither has been *Footnote continued on next page….*

Based on the undisputed facts, there are two Dollar Energy policies that are potentially relevant to this case.  First, there is Dollar Energy's policy requiring applicants to list all felony and misdemeanor convictions on the application, but also stating that, "[a] conviction will not necessarily disqualify an applicant from employment.  Each conviction is considered on a case-by-case basis subject to an individualized assessment.  A conviction which is substantially related to the job for which you are applying may be taken into consideration in accordance with applicable federal, state, and local law."  (ECF No. 62 ¶ 8; ECF No. 59-4 at 5.)  Second, there is Dollar Energy's policy that "any falsification, misrepresentation, omission, or incomplete answer or statement by [the applicant] on this application or any accompanying resume related to [the] application for employment may cause Dollar Energy Fund, Inc. to eliminate [the applicant] from further consideration from employment."  (ECF No. 62 ¶ 20; ECF No. 59-4 at 7.)

However, a review of the record and the parties' arguments shows that Delay's claim is not about either of these individual practices standing alone, but rather how they were applied (or not applied) together.  Essentially, the employment practice that Delay challenges is the withdrawal of an offer of employment due to an applicant's failure to accurately disclose one's criminal history while not conducting an individualized assessment of the criminal history.  (ECF No. 64 at 5 (Delay arguing that Dollar Energy was required by EEOC guidance to "conduct individualized assessment on those with criminal convictions, regard[l]ess of any other reason an employer might have for terminating an employee's job.").)

---

alleged here or proven in this case.  Instead, the Court views Delay's reference to "due process" as a variation on his prior characterizations that Dollar Energy failed to provide conduct an individualized assessment with respect to his criminal history.

14

    b.  Delay Points to No Statistical Evidence or Analysis to Show That the Challenged Employment Practice Causes a Disparate Impact on Race

Dollar Energy argues that Delay has pointed to no evidence that Dollar Energy's policy "affected anyone but him, or that it has caused Dollar Energy to hire fewer Black employees." (ECF No. 57 at 9.)  In response, Delay only discusses facts related to his case and alleges that he was entitled to an individualized assessment of his criminal history.  (ECF No. 64; ECF No. 65 at 2 (Dollar Energy arguing that "Plaintiff seemingly relies only on *his own* job offer rescission to support his claim" and that "[h]e offers no examples of any other individuals—of any race—who were denied employment at Dollar Energy because of its hiring policies") (emphasis original)).  In his specific case, however, it is undisputed that Delay did not report many of his criminal convictions on his employment application.  (ECF No. 62 ¶¶ 50–51.)

Although "[n]ational data supports a finding that criminal record exclusions have a disparate impact based on race and national origin" (*see* U.S. Equal Emp't Opportunity Comm'n, 915.002, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (2012) § I (Summary) [hereinafter "Guidance"]), Delay has offered no statistic or analysis as to how, in this case, Dollar Energy's specific employment practice—withdrawing an offer of employment due to an applicant not accurately disclosing his or her criminal history and not conducting an individualized assessment of the criminal history—has a discriminatory impact on race.  Nor can it be argued that Dollar Energy has an outright ban on hiring individuals with criminal histories given the undisputed policy written on the job

application stating that "[a] conviction will not necessarily disqualify an applicant from employment."  (ECF No. 62 ¶ 8; ECF No. 59-4 at 5.)

Delay's argument is solely that Dollar Energy was required by the Guidance to "conduct individualized assessment on those with criminal convictions, regard[l]ess of any other reason an employer might have for terminating an employee's job."  (ECF No. 64 at 5.)  This overstates the EEOC's Guidance.  The Guidance acknowledges that not every employment policy that takes criminal history into consideration causes a disparate impact.  *See* Guidance § I (Summary) ("an employer's neutral policy (e.g., excluding applicants from employment based on certain criminal conduct) *may* disproportionately impact some individuals protected under Title VII, and *may* violate the law if not job related and consistent with business necessity (disparate impact liability)." (emphasis added)); *see also id.* ("An employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII.").

Further, the Guidance treats individualized assessments as a tool that *may* be used to avoid Title VII liability in the employment context.[8]  *Id.* (noting that "[a]lthough Title VII does not require individualized assessment in all circumstances, the use of a screen that does not include individualized assessment is more likely to violate Title VII.").  Here, in light of the fact that Dollar Energy had another undisputed reason for withdrawing Delay's application (his inaccurate

---

[8] Individualized Assessments "can help employers avoid Title VII liability by allowing them to consider more complete information on individual applicants or employees, as part of a policy that is job related and consistent with business necessity."  Guidance § V.B.4 (Determining Whether a Criminal Conduct Exclusion Is Job Related and Consistent with Business Necessity). Title VII "does not necessarily require individualized assessment in all circumstances" if a target screen is "narrowly tailored to identify criminal conduct with a demonstrably tight nexus to the position in question."  Guidance § V.B.8 (Targeted Exclusions that Are Guided by the *Green* Factors).

reporting of his criminal history), the fact that Dollar Energy did not conduct an individualized assessment in Delay's case, without more evidence as to the effect of this practice on different racial groups, is insufficient to demonstrate disparate impact.[9]

Because Delay has failed to "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group," *Watson*, 487 U.S. at 994–95, he has failed to establish his prima facie case.  Because Delay has failed to establish his prima facie case, the burden does not shift to Dollar Energy to establish a business-necessity defense.[10]

Thus, the Dollar Energy's Motion for Summary Judgment with respect to Delay's Title VII disparate impact claim will be granted.

### C. Dollar Energy is Entitled to Summary Judgment on the Pennsylvania's CHRIA Claim

#### 1. Pennsylvania's CHRIA

Section 9125 of Pennsylvania's CHRIA governs an employer's use of an applicant's criminal history in the hiring process and "prohibits employers from arbitrarily relying on a job

---

[9] Delay cites *EEOC v. Hussey Copper, Ltd.*, 696 F. Supp. 2d 505 (W.D. Pa. 2010) to argue that summary judgment should be denied because Dollar Energy failed to "conduct an adequate [i]ndividualized assessment of a job can[d]idate." (ECF No. 64 at 5.)  However, that case is distinguishable because the "individualized assessments" were considered in the context of Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.  See Hussey Copper*, 696 F. Supp. 2d at 517.  The Supreme Court "has made clear that the ADA requires an individualized inquiry into the ability of an … applicant to perform a particular job, one which focuses on the medical condition's actual effect on the specific plaintiff."  *Id.*

[10] Delay argues that Dollar Energy's statistics of their overall workforce (ECF No. 59-24) may not be used as an "affirmative defense" (ECF No. 64 at 6).  Although Delay is correct that disparate claims focus "on employment and promotion requirements that create a discriminatory bar to *opportunities*" and not "on the overall number of minority… applicants actually hired or promoted," *Connecticut v. Teal*, 457 U.S. 440, 450 (1982), at summary judgment, Delay must offer *some evidence* to establish his prima facie case.  As discussed above, Delay has offered no statistics or analysis as to how Dollar Energy's employment practice caused a disparate impact.  His claim rests solely on his own employment application process.

applicant's criminal history record information during the hiring process." *McCorkle v. Schenker Logistics, Inc.*, 1:13-CV-3077, 2014 WL 5020598, at *5 (M.D. Pa. Oct. 8, 2014) (emphasis original).

Specifically, "[w]henever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with [Section 9125]." 18 Pa. C.S. 9125(a). "Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied" and "an employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information." 18 Pa. C.S. 9125(b)–(c).

"Thus, under the CHRIA, when an employer denies employment to an applicant *because* he has been convicted of a misdemeanor or felony, the employer's consideration of the conviction is limited to the extent it relates to the applicant's suitability for the position." *McCorkle*, 2014 WL 5020598, at *5 (emphasis original).

> 2.  Delay Points to No Evidence that Shows Dollar Energy Considered His Criminal Convictions in Violation of the PHRIA

As an initial matter, it is undisputed that Delay did not include his full criminal history on his application and that the application warned that any omission or falsification could lead to revocation of the job offer. (ECF No. 62 ¶¶ 8, 16–18, 20.)

Delay's arguments that record evidence proves that Dollar Energy improperly considered his criminal history—as opposed to his inaccurate criminal history—are unpersuasive. (ECF No.

64 at 2.)  A close read of each statement shows that every time Dollar Energy referred to the content of Delay's criminal history, it did so as an additional reason *that would have supported* the withdrawal his offer of employment.  This is abundantly clear in each exhibit cited by Delay—DeMarco's deposition[11], Dollar Energy's EEOC Position Statement[12], Dollar Energy's Response to a Request for Information from the EEOC[13], and Dollar Energy's Position Statement to the early

---

[11]  ECF No. 64-4 at 2–3 ("Q. […W]hen you received my criminal background check, there were convictions that you saw that you objected to that concerned Dollar Energy Fund? A. No. It was the fact that they were not on your application. You did not disclose them on your application. Q. Okay. So it wasn't the charges, themselves? A. Correct. Q. Even though, in your response to the [EEOC], you claim that my convictions were a concern, were a motivating factor, as to why the job offer was rescinded? A. It's not why the job offer was rescinded. Now, if you would have put them all on your application, then we would have had to discuss them, but it never came to that. They were not on your application…."); *id.* ("A. …Your offer was rescinded, because you falsified your application. Q. So you assume, but okay. We will not pursue that. So you're saying it did not have anything to do with the criminal convictions? A. Correct. Q. Okay.  So it's not understandable to me as to why your company said it played a role in that. I mean, that's something. I guess we have to figure out how we're going to correlate that. Your counsel should have provided you with a copy of the Position Statement.  A. Your offer was rescinded, because you falsified information on your application. If you did put all of your criminal convictions, some of your convictions might have prevented you from getting the position. We would have had to evaluate it further. I believe that's why they were mentioned. Q. Well, we'll have to fight that out in court. All right. So you're saying. That your company, when you have a person who has convictions, that you, actually, provide individualized assessments; is that correct? A. If they write them on their application correctly."); *see also*, ECF No. 66-1 at 23:3–26:15.

[12] *See* ECF No. 37-1.  Although Delay cites "ECF No. 37, Exhibit 2," the quotation and reference to Dollar Energy's EEOC position paper makes clear that the correct document is ECF No. 37-1.  (*Compare* ECF No. 64 at 4 *with* ECF No. 37-1 at 7–8 ("Put simply, Delay's conditional offer of employment was rescinded because he failed to disclose multiple felony criminal convictions. This failure to disclosure critical information not only impugned Delay's trustworthiness as an employee, but at least three of the criminal convictions, credit card fraud, theft by check and telecommunications harassment, were substantially related to the Customer Service Representative position. These convictions could not be ignored—to ignore them would place Dollar Energy's clients at great risk. Consequently, it was these legitimate, nondiscriminatory business reasons that resulted in Delay's conditional offer of employment being rescinded by Dollar Energy.").)

[13]  ECF No. 64-2 at 1–3 ("Prior to [Delay] starting the job, Dollar Energy rescinded the job offer because it was revealed that Charging Party falsified information on his application related to criminal convictions.  For these reasons, Dollar Energy submits that information related to other applicants for the Customer Service Representative is not applicable to this Charge…. As you can see from the job description, one of the primary functions of the Customer Service Representatives is 'taking applications over the phone for Dollar Energy's programs' which gives them access to the applicant's personal information. As such, criminal convictions for credit card fraud, theft by check and telecommunications harassment, were substantially related to the Customer Service Representative position.'")

neutral evaluator[14].  Delay has pointed to no evidence to show that Dollar Energy actually took his criminal convictions into consideration when withdrawing his employment offer.[15]

Like the plaintiff in *McCorkle*, "the undisputed evidence of record shows that Defendant did not revoke Plaintiff's job offer *because of* his [] convictions. Rather, it revoked his offer because he intentionally misrepresented his criminal history on his employment application." *McCorkle*, 2014 WL 5020598, at *5 (emphasis original).

Thus, the Dollar Energy's Motion for Summary Judgment with respect to Delay's Pennsylvania CHRIA will be granted.

## V.    Conclusion

For these reasons, the Court will grant Dollar Energy's Motion for Summary Judgment, will dismiss all of Delay's claims against Dollar Energy and will deny as moot Defendants' Motion in Limine to Exclude Any Evidence Concerning Rebecca Sutton from Consideration Concerning the Merits of Plaintiff's Claim or Defendant's Motion for Summary Judgment.

An appropriate Order follows.

---

[14] ECF No. 64-3 at 2.  Dollar Energy's statement to the early neutral evaluator is identical in all relevant respects to the Dollar Energy's EEOC position paper.  *See supra* n. 13.

[15] Even if Dollar Energy had taken Delay's criminal history into consideration, it is undisputed that Delay did not "explain the circumstances surrounding any of the convictions" (ECF No. 62 ¶ 22) and certain of these convictions, including credit card fraud, theft by check and telecommunications harassment, appear to relate Delay's suitability of a customer service representative.  (ECF No. 57 at 11.)  Delay disputes that "[a]t Dollar Energy, customer service representatives gather sensitive personal information from Dollar Energy's customers including, names, birthdates, Social Security numbers, all of the financial and income information of every individual who lives within a residence, and their utility bill information" by arguing that "[o]nly certain customer service representatives are authorized to get access to this information" and that he "would not have had access to this sensitive information."  (ECF No. 62 ¶ 5.) Delay fails to support this argument with any evidence, however.  (*Id.*)

Dated: May 1, 2023                    BY THE COURT:


                                      /s/ Patricia L. Dodge
                                      PATRICIA L. DODGE
                                      UNITED STATES MAGISTRATE JUDGE